# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| AXCESS BROADCAST SERVICES, INC., § <br> d.b.a. THE AXCESS GROUP, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> DONNINI FILMS and STEVE DONNINI, § <br> § <br> Defendants. § | Civil Action No. 3:04-CV-2639-L |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion for Summary Judgment, filed February 3, 2006; Plaintiff's No Evidence Motion for Partial Summary Judgment, filed February 6, 2006; and Plaintiff's Motion to Strike the Affidavit of Defendant Steve Donnini Filed in Support of Defendants' Motion for Summary Judgment, filed February 23, 2006.  After careful consideration of the motions, responses, replies, competent summary judgment evidence and applicable law, the court **denies** Defendants' Motion for Summary Judgment; **denies as moot** Plaintiff's Motion to Strike the Affidavit of Defendant Steve Donnini Filed in Support of Defendants' Motion for Summary Judgment; and **grants** Plaintiff's No Evidence Motion for Partial Summary Judgment.

### I.     Procedural and Factual Background

Plaintiff Axcess Broadcast Services, Inc. ("Plaintiff" or "Axcess") filed this action against Defendants Donnini Films and Steve Donnini ("Donnini") (collectively "Defendants") on December 13, 2004.  Plaintiff seeks a declaratory judgment that Defendants have no copyrights in video clips they produced for Plaintiff.  Alternatively, Plaintiff seeks a declaratory judgment that its use of the video clips is proper under an implied license from Defendants. Plaintiff also seeks damages,

**Memorandum Opinion and Order - Page 1**

contending that Defendants' actions of contacting Plaintiff's customers regarding possible copyright infringement constitute unfair competition.

Defendants filed an answer and cross-complaint [sic] against Plaintiff contending that Plaintiff infringed on their copyrights by reusing the videos without paying a reusage fee. Defendants seek damages for copyright infringement and the profits made by Plaintiff from the commercials.

Axcess is an advertising agency that provides slogans, musical jingles, and other advertisement products and services for its clients. In October 1993, Plaintiff and Defendants entered into an oral agreement for Defendants to shoot video for television commercials for Plaintiff. Defendants shot approximately 45 video clips for Plaintiff between 1993 and 1999. Plaintiff paid Defendants for the production of the videos. In September 2004, Donnini saw a commercial broadcast on an Orlando, Florida television station that contained a portion of a video created by Defendants for Axcess. On November 18, 2004, Donnini sent Axcess a letter demanding that it pay Defendants "usage fees" for the use of the video footage used in the Orlando, Florida commercial. The letter also stated that if Plaintiff failed to contact Defendants the next day, Defendants would contact station managers in various cities about usage of its footage in commercials sold to them by Plaintiff. On December 17, 2004, Defendants sent e-mails to various television station managers, stating that Plaintiff had violated Defendants' copyrights by failing to pay them reusage fees, and that the stations' broadcast of the videos might constitute copyright infringement by the stations.

Defendants filed a motion for summary judgment contending that: (1) Plaintiff has no copyright ownership in the audiovisual works created by Defendants; (2) Plaintiff's copyright infringement of Defendants' audiovisual works is not excused by an implied license; and (3)

**Memorandum Opinion and Order - Page 2**

Defendants' notice to the television station managers did not constitute unfair competition. Plaintiff filed a no evidence motion for partial summary judgment contending that Defendants have no evidence of copyright infringement for 44 of the 45 video clips that Defendants produced for Plaintiff.

The court now considers the motions. In resolving the motions, the court relies on the summary judgment standard as set forth in the following section.

## II.   Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

**III.   Analysis**

    **A.   Defendants' Motion for Summary Judgment**

Defendants contend that Plaintiff has no copyright ownership in the videos they created. They maintain that the parties agreed that Defendants would produce television commercials for Plaintiff, provide Plaintiff master tapes of the commercials, and Plaintiff would pay Defendants an original fee for each work produced. Defendants also allege that the parties agreed that Plaintiff

would pay Defendants a reusage fee each time a part of or the whole video was used. Defendants further contend that Plaintiff's alleged copyright infringement of their work is not excused by an implied license.

### 1. Copyright Infringement

Pursuant to the Copyright Act, ownership of a copyright[1] "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989). The Copyright Act, however, creates an exception to this general rule for "works made for hire." *See* 17 U.S.C. § 201(b). This section provides:

> **(b) Works Made for Hire**. – In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

---

[1] A copyright is a property right

> in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
> > (1) literary works;
> > (2) musical works, including any accompanying words;
> > (3) dramatic works, including any accompanying music;
> > (4) pantomimes and choreographic works;
> > (5) pictorial, graphic, and sculptural works;
> > (6) motion pictures and other audiovisual works;
> > (7) sound recordings; and
> > (8) architectural works.

17 U.S.C. § 102.

**Memorandum Opinion and Order - Page 5**

*Id.* "Work made for hire" is defined as:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, *if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire*. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

17 U.S.C. § 101 (emphasis added).

Defendants allege that Plaintiff has no copyright ownership in the videos they created for them. Axcess has voluntarily withdrawn its claim of copyright ownership. Plaintiff's Response at 15. Although Axcess maintains that it was its practice to enter into written work made for hire agreements, it concedes that there was no written agreement between the parties, and thus the agreement was only oral and is not effective pursuant to 17 U.S.C. § 101. Access contends, however, that it has an implied license to the videos, and is therefore not liable to Defendants for copyright infringement. The court now addresses the issue of an implied license.

**2.     Implied License**

The Copyright Act requires that exclusive licenses[2] be evidenced by a writing. 17 U.S.C. §§ 101, 204(a). No such writing requirement, however, applies to nonexclusive licenses.[3] *See id.* § 101; *Lulirama, Ltd., Inc. v. Axcess Broad. Servs., Inc.,* 128 F.3d 872, 879 (5th Cir. 1997). A nonexclusive license may be granted "orally, or may even be implied from conduct." *Id.* "'When the totality of the parties' conduct indicates an intent to grant such permission, the result is a legal nonexclusive license . . . .'" *Id.* (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A], at 10-41). A nonexclusive license supported by consideration is a contract, and is irrevocable. *Id.* at 882.

An implied license arises when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* (citations omitted); *see also SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 211 F.3d 21, 25 (2d Cir. 2000) ("[C]ourts have found implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'") (quoting *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir. 1990)). "[A]

---

[2]Section 101 of the Copyright Act defines "transfer of copyright ownership" as an exclusive license or some other instrument of conveyance of the exclusive rights comprised in a copyright. 17 U.S.C. § 101. "In an exclusive license, the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others. The licensee violates the copyright by exceeding the scope of this license." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).

[3]"Nonexclusive license" is defined as "a license of intellectual property rights that gives the licensee a right to use, make, or sell the licensed item on a shared basis with the licensor and possibly other licensees." Black's Law Dictionary 939 (8th ed. 2004).

nonexclusive implied license need not be evidenced by a writing; rather, such a license may be implied from conduct or granted orally." *Carson v. Dynegy,* 344 F.3d 446, 451 n.5 (5th Cir. 2003).

Axcess contends that it has an irrevocable nonexclusive implied license to all of the video works in question. It maintains that Donnini orally granted it the implied license during the original 1993 negotiations between the parties. It contends that this is evidenced because Donnini performed work for it from 1993 through 1999 without objection. It also asserts that Donnini's overall conduct establishes the existence of an irrevocable nonexclusive implied license. Alternatively, Axcess contends that, at a minimum, Donnini's conduct raises a fact question on this issue.

Defendants dispute that Plaintiff has an implied license, and contend that any implied license fails for lack of consideration. They maintain that they never intended or expressly provided Plaintiff with a license to use or reuse the videos without payment to them for that reusage. They assert that it was specifically agreed to by the parties that any reusage by Plaintiff was predicated on payment to Defendants for each reusage, as is common in the industry. Defendants maintain that the payment for the reusage was the consideration for the grant of an implied license; and since there was no payment, any implied license is revoked. Defendants further argue that, as there was an expressed oral contract regarding the reusage of the videos, there can be no implied contract. Defendants also argue that if there was an implied license, it fails, as it was for an indefinite period of time, and thus violates the Statute of Frauds.[4]

In response to Defendants' Statute of Frauds argument, Axcess maintains that the nonexclusive licenses were not indefinite. It contends that the agreement was for Defendants to

---

[4] Tex. Bus. & Com. Code Ann § 26.01(a)(1), (b)(6) provide that an agreement "which is not to be performed in one year from the date of making the agreement" is not enforceable unless the agreement is in writing.

**Memorandum Opinion and Order - Page 8**

create the videos, and that it paid for each video within one year of the Defendants delivering the videos to it.

The court concludes that the evidence from both sides presents a classic question of fact for the fact finder. Reasonable minds could differ regarding the existence of an irrevocable nonexclusive implied license respecting the videos. There is no written agreement in this case. The parties do not dispute that there was an oral agreement for Defendants to produce the videos for Plaintiff. Donnini concedes in his affidavit that he understood that the videos would be resold to Plaintiff's clients. What is disputed is whether Defendants would be paid if the videos were reused or resold. Plaintiff has presented evidence in the form of a declaration from its president Otis Conner that its payment to Defendants "was an original one-time payment entitling Axcess to use and reuse the work without additional payments." Plaintiff's Appendix, Ex. 1. Conversely, Defendants have presented evidence in the form of an affidavit from Donnini that he was to be paid every time the video footage was resold, and that the reuse fees would be equal to the original price of the project. Defendants' Appendix, Ex. 2.

In light of the summary judgment evidence, and drawing all inferences in Plaintiff's favor, the court determines that Plaintiff has raised a genuine issue of material fact that it had an implied license with respect to the videos. Such evidence precludes summary judgment as to Defendants' claim that Plaintiff infringed on their copyrights as to the videos.

### 3. Unfair Competition

Plaintiff contends that Defendants' "statements to [its] customers suggesting that those customers owe Defendants money for use of airing of Plaintiff's commercials constitute unfair competition under state unfair competition laws." Plaintiff's Complaint at 6. Plaintiff maintains that

the statements were false or misleading representations of fact that disparaged them in the marketplace and interfered with contractual relations or prospective business relations. *Id*. at 7.

Under Texas law, unfair competition is a tort that requires that a plaintiff "show an illegal act by the defendant which interfered with plaintiff's ability to conduct his business." *Taylor Publ'n Co. v. Jostens Inc.,* 216 F.3d 465, 486 (5th Cir. 2000) (citing *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App. – Dallas 1989, *writ denied*)). Plaintiff contends that Defendants' statements to the television stations were misrepresentations of copyright infringement.

The essential elements of a negligent misrepresentation claim are:

> (1) a false representation;
> (2) the failure to exercise reasonable care in making the representation; and
> (3) damages suffered by the plaintiff as the result of reasonable reliance on the representation.

*Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.,* 88 F.3d 347, 356 (5th Cir. 1996), *cert. denied,* 519 U.S. 1078 (1997); *see also Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991).

Defendants contend that its notice to the television station managers did not constitute unfair competition. They maintain that: (1) they were legally entitled to notify the stations to enforce their legal rights; (2) their actions did not threaten Plaintiff or its clients; (3) the statements regarding the reusage fees are true, and, therefore, they made no misrepresentation to the stations; and (4) they did not interfere with Plaintiff's business, as they were justified in the exercise of their legal rights.

Plaintiff counters that Defendants' statements regarding Plaintiff infringing on their copyrights were not true, and, therefore, were false representations intended to influence Plaintiff's clients to cease working with Plaintiff, or to be wary of continuing to work with Plaintiff. Plaintiff

**Memorandum Opinion and Order - Page 10**

also asserts that Defendants statements to the stations damaged its reputation in the industry, and resulted in reduced income under existing contracts, and reduced future contracts with the stations. Plaintiff further alleges that Defendants had no legal right to assert claims of copyright infringement because it has an implied license in the videos.

The issue in this unfair competition claim is whether the letters to the television station were a false representation as to Defendants' claim of copyright infringement; and whether Defendants willfully and intentionally acted to interfere with Plaintiff's business relations.[5] At this stage of the litigation, there is a genuine issue of material fact whether Plaintiff infringed on Defendants' copyrights. Accordingly, there is a genuine issue of material fact regarding the truthfulness of Defendants' representation regarding copyright infringement; whether Defendants

---

[5]The elements of a claim for tortious interference with contract are:

(1) a contract subject to interference existed;
(2) the alleged act of interference was willful and intentional;
(3) the willful and intentional act proximately caused damage; and
(4) actual damage or loss occurred.

*ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997). The elements of a claim for tortious interference with prospective contract or business relation are:

(1) a reasonable probability that the parties would have entered into a contractual relationship;
(2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring;
(3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or it knew that the interference was certain or substantially certain to occur as a result of the defendant's conduct; and
(4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 413-14 (Tex. App. – Waco 2001, *pet. denied*) (citations omitted). "Independently tortious" means conduct that would violate some other recognized tort duty. *Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex. 2001).

**Memorandum Opinion and Order - Page 11**

acted willfully and intentionally to interfere with Plaintiff's existing and future contracts; and whether any actual damage or loss occurred. Defendants' motion for summary judgment as to Plaintiff's claim of unfair competition, therefore, should be denied.

### B.  Plaintiff's Motion to Strike Donnini's Affidavit

Plaintiff moves to strike Donnini's affidavit filed in support of Defendants' motion for summary judgment. Plaintiff contends that the affidavit does not comply with Fed. R. Civ. P. 56(e), in that: (1) the affidavit does not indicate that Donnini appeared before a notary, was duly sworn, and that his statements were on his oath; (2) the affidavit does not indicate that the statements therein are true and correct under penalty of perjury; and (3) the affidavit does not state that it was executed in person. Plaintiff's Motion at 4. Plaintiff also moves to strike certain portions of the affidavit, contending that they violate the Federal Rules of Evidence, are speculative, contain conclusory allegations, and are contradicted testimony from an interested witness. Defendants did not respond to Plaintiff's motion.

The court reaches the same decision irrespective of its consideration of Donnini's entire affidavit, as the court has determined that Plaintiff has raised a genuine issue of material fact as to the issues presented in Defendants' motion for summary judgment. The court therefore **denies as moot** Plaintiff's Motion to Strike the Affidavit of Defendant Steve Donnini Filed in Support of Defendants' Motion for Summary Judgment.

### C.     Plaintiff's No Evidence Motion for Summary Judgment

Plaintiff alleges that Defendants have no evidence of copyright infringement for 44 of the 45 videos that Defendants produced for Plaintiff. Plaintiff admits that it reused a clip of one video. Plaintiff maintains that, other than the one video that it admits it reused, Defendants have not identified any other video clips that were reused. Plaintiff asserts that, as Defendants have the burden of proof as to their copyright infringement claims, 44 of the claims should be dismissed for Defendants' failure to support the claims with competent summary judgment evidence.

Defendants respond that, as Plaintiff has admitted to reusing one of their videos, a genuine issue of material fact exists as to how many additional times Plaintiff has infringed on their copyrights. Defendants contend that they have identified six instances of reusage of their work by Plaintiff.

As the party that opposes Plaintiff's motion, Defendants are required to come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Defendants fail to meet their burden. Defendants offer mere conclusory allegations that there are other instances of reusage. Such conclusory allegations are not competent summary judgment evidence. *See Eason,* 73 F.3d at 1325. Defendants' assertion that there are six instances of reusage is unsubstantiated by a declaration or other competent summary judgment evidence. Defendants fail to identify which of their original videos were reused, and the commercial or other video presentation in which the video or video clip was used. Defendants thus fail to identify specific evidence in the record and fail to articulate the precise manner in which that evidence supports their claim of copyright infringement. Accordingly, the court determines that there is no genuine issue of material fact as to Defendants' claim of copyright infringement as to 44 of the 45

videos that Defendants produced for Plaintiff. Plaintiff is entitled to judgment as a matter of law as to these 44 videos.

## VI. Conclusion

For the reasons herein stated, a genuine issue of material fact exists with respect to Defendants' claim that Plaintiff infringed on its copyrights with respect to one of the videos Defendants produced for Plaintiff. The court therefore **denies** Defendants' Motion for Summary Judgment; **denies as moot** Plaintiff's Motion to Strike the Affidavit of Defendant Steve Donnini Filed in Support of Defendants' Motion for Summary Judgment; and **grants** Plaintiff's No Evidence Motion for Partial Summary Judgment as to claims of copyright infringement of 44 of the 45 videos Defendants produced for Plaintiff. Accordingly, the matters that remain for trial are: (1) whether Plaintiff infringed on Defendants' copyrights by reusing one of the videos; (2) whether Plaintiff had an implied license with respect to the one video; and (3) Plaintiff's claim of unfair competition.

**It is so ordered** this 26th day of April, 2006.

Sam A. Lindsay
United States District Judge