IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AXCESS BROADCAST SERVICES, INC., § <br> d.b.a. THE AXCESS GROUP, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> DONNINI FILMS and STEVE DONNINI, § <br> § <br> Defendants. § | Civil Action No. 3:04-CV-2639-L |

## MEMORANDUM OPINION AND ORDER

Plaintiff Axcess Broadcast Services, Inc. ("Axcess" or "Plaintiff") filed this action against Defendants Donnini Films and Steve Donnini ("Donnini") (collectively "Defendants") on December 13, 2004, contending, among other things,[1] that Defendants' conduct of contacting Plaintiff's customers regarding possible copyright infringement constitute unfair competition. On February 3, 2006, Defendants filed a motion for summary judgment. On February 6, 2006, Plaintiff filed a no evidence motion for partial summary judgment. On April 26, 2006, the court denied Defendants' motion for summary judgment, finding that a genuine issue of material fact existed with respect to Defendants' claim that Plaintiff infringed on its copyrights with respect to one of the videos Defendants produced for Plaintiff. The court granted Plaintiff's motion for partial summary judgment as to claims of copyright infringement of 44 of the 45 videos Defendants produced for

---

[1]Axcess originally sought a declaratory judgment that Defendants had no copyrights in video clips they produced for Axcess; or, alternatively, that Axcess's use of the video clips was proper under an implied license from Defendants. Defendants filed an answer and cross-complaint [sic] against Axcess contending that Axcess infringed on their copyrights by reusing the videos without paying a reusage fee. Prior to the trial, the parties agreed that they are the co-authors and co-owners of the one video at issue. Thus there is no issue of copyright infringement before the court.

Plaintiff. Prior to trial, the parties agreed that they were the co-owners and co-authors of the one video at issue. The remaining issue for trial was whether Defendants engaged in unfair competition.

A bench trial was held on May 11, 2006. The parties filed their Proposed Findings of Fact and Conclusions of Law on May 31, 2006. By this opinion and order, the court makes it findings of fact and conclusions of law,[2] as required by Fed. R. Civ. P. 52(a).

## I.    **Findings of Fact**[3]

Axcess is an advertising agency that provides slogans, musical jingles, and other advertising products and services for its clients. In October 1993, Axcess and Defendants entered into an oral agreement for Defendants to shoot video for television commercials for Axcess. Defendants shot approximately 45 video clips for Axcess between 1993 and 1999. Axcess paid Defendants for the production of the videos. The videos were never registered by either party as copyrighted work.

In September 2004, Donnini saw a commercial broadcast on an Orlando, Florida television station that contained a portion of a video he created for Axcess. On November 18, 2004, Donnini sent Axcess a letter demanding that it pay him for the use of the video footage used in the Orlando commercial. The letter also stated that if Axcess failed to contact Donnini by the next day, he would

---

[2] To the extent any finding of fact is deemed to be a conclusion of law, it is adopted as such; and likewise, any conclusion of law that is deemed to be a finding of fact is so adopted.

[3] The facts contained herein are either undisputed, or the court has made the finding based on the exhibits admitted into evidence, as well as the credibility or believability of each witness. In doing so, the court considered all of the circumstances under which the witness testified, which include: the relationship of the witness to Plaintiff or Defendants; the interest, if any, the witness has in the outcome of the case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he testified; the extent to which the witness was contradicted or supported by other credible evidence; and whether such contradiction related to an important factor in the case or some minor or unimportant detail. When necessary, the court comments on the credibility of a witness or the weight to be given a witness's testimony.

contact station managers in various cities about usage of his footage in commercials sold to them by Axcess. Axcess refused Donnini's demands.

In December 2004, Donnini sent letters to approximately 15 television station managers via electronic mail, stating in part:

> It has come to our attention that The Axcess Group/Axcess Broadcast Services (Otis Conner) could be engaged in USA Copyright Code infringement from 1994 - 2004 on usage of video clips edited into TV commercials that were sold to TV Stations and their clients without paying royalties for video clips owned by Donnini Films. If your station has contracted with Axcess Group/Axcess Broadcast Services (Dallas, TX), (Otis Conner) for the purpose of selling TV media contracts to advertisers, your station could be liable for damages for violating USA Copyrights to film/video footage used in commercials sold to your media buying clients by Axcess Group/Axcess Broadcast Services (Otis Conner).

Plaintiff's Exhibit 9.[4] The letters were sent to stations that Donnini knew had a prior working relationship with Axcess. Donnini wanted the stations to know that, as a result of their working relationship with Axcess, they may have violated copyright laws. The only response Donnini received regarding his letters was from the Orlando station, indicating that the letter had been forwarded to the station's corporate counsel for his advice as to how to proceed. Other than the letters, Donnini took no further action with respect to the television stations.

---

[4]There was also another letter with slightly different wording, Plaintiff's Exhibit 10, which reads in pertinent part as follows:

> It has come to our attention that The Axcess Group/Axcess Broadcast Services (Otis Conner) may have engaged in USA Copyright Code infringement from 1994-2004 on usage of video clips edited into TV commercials sold to TV Stations clients in the USA without paying royalties for video clips owned by Steve Donnini/Donnini Films. If your station has contracted with Axcess Group/Axcess Broadcast Services (Dallas, TX), (Otis Conner) for the purpose of selling TV commercials to advertisers, your station could be liable for damages for violating USA Copyrights to film/video footage used in commercials could [sic] have been sold to you by Axcess Group/Axcess Broadcast Services (Otis Conner).

Plaintiff's Exhibit 10. Since the testimony focused on Exhibit 9, the court directs its discussion to Exhibit 9.

**Memorandum Opinion and Order - Page 3**

At the time Donnini sent the letters, Axcess had contracts to provide advertising services to television stations in Atlanta, Georgia; Honolulu, Hawaii; Orlando, Florida; and Dothan, Alabama. The contracts were to provide advertising services for six years. All of the stations contacted Axcess regarding Donnini's letter.

In March 2006, without explanation, the Orlando station canceled the video production segment of a seminar Axcess was to conduct that month for the station's advertising customers. Axcess was informed of the cancellation the night before the seminar was to commence. The seminar proceeded without this segment. The Orlando station currently produces its own videos, using an in-house production manager and other outside talent and sources. Axcess estimates that as a result of the cancellation of the video portion of the seminar it lost approximately $29,400. Although the Orlando station renewed its contract with Axcess, it did not renew the video production segment of the contract. Axcess estimates the non-renewal of the video portion of the contract resulted in losses in excess of $176,400. In an effort to address the concerns raised by Donnini's letter to the television stations, Axcess estimates that one of its executive will have to personally visit each station. It estimates the total expense for the trips is $32,000.

## II.   Conclusions of Law

### A.   Unfair Competition

Under Texas law, unfair competition is a tort that requires a plaintiff "show an illegal act by the defendant which interfered with plaintiff's ability to conduct his business." *Taylor Publ'n Co. v. Jostens Inc.,* 216 F.3d 465, 486 (5th Cir. 2000) (citing *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App. – Dallas 1989, *writ denied*)). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Id*. Axcess contends that Defendants

engaged in unfair competition by making negligent misrepresentations of copyright infringement to the television stations, and by tortiously interfering with its existing and prospective business contracts.

### 1. Negligent Misrepresentation

The essential elements of a negligent misrepresentation claim are:

    (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

    (2) the defendant supplies "false information" for the guidance of others in their business;

    (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

    (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686 n.24 (Tex. 2002) (quoting *Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991)). A claim for negligent misrepresentation does not require knowledge of the falsity or reckless disregard of the truth or falsity of the representation at the time it was made, but only a failure to exercise reasonable care in obtaining or communicating the information. *See Fed. Land Bank,* 825 S.W.2d at 442.

The court finds that, although Axcess proved the first three elements of this claim, it failed to prove by a preponderance of the evidence that it suffered a loss by justifiably relying on the misrepresentations regarding copyright ownership made by Donnini in the letter. Donnini made the representations regarding copyright ownership in the course of his business as owner and operator of Donnini Films. Donnini's letter, which was sent to various television stations, stated that Donnini Films owned the video clips and that he had not been paid royalties for the use of the videos. He

**Memorandum Opinion and Order - Page 5**

also stated that the television stations could be liable for damages for violating copyright law. This statement was false insofar as it sought to portray Donnini as the sole owner of the videos. Donnini now admits that Axcess is a co-author and co-owner of the one video at issue. The court finds that Donnini did not exercise reasonable care or competence in obtaining or communicating information regarding copyright ownership of the video. Although Donnini claims he contacted the television stations only to determined who had used his work and how much was used, Donnini made no effort to determine the true ownership of the video prior to sending out the letters. The letters clearly raised concerns at least at the Atlanta, Honolulu, Dothan, and Orlando stations which contacted Axcess regarding them. Thus Axcess proved the first three elements of this claim.

Axcess, however, did not prove the fourth element. Axcess takes the position that its clients' reliance on the misrepresentation caused it (Axcess) to suffer a loss. Although the misrepresentation need not be made to the plaintiff, there must be evidence that the plaintiff justifiably relied on the misrepresentation. Section 552 of the Restatement (Second) of Torts limits liability to a loss suffered to the following:

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552(a) (1977). Texas has adopted this limitation on persons who may recover for a claim of negligent misrepresentation. *See McCamish, Martin, Brown, & Loeffler v. F. E. Appling Interests, Inc.,* 991 S.W.2d 787, 791 (Tex. 1999). In this case, Donnini was not supplying the information for Axcess's benefit and guidance in its business transactions. Further, Axcess cannot claim that it justifiably relied on Donnini's misrepresentations, because it disputed

**Memorandum Opinion and Order - Page 6**

Donnini's ownership of the copyright. Thus Donnini is not liable to Axcess because Axcess does not fall within the category of persons to whom Donnini could be liable as defined by Section 552(a); nor did it justifiably rely on Donnini's representations regarding copyright ownership in transacting its business.

Even if the court were to determine that Axcess's clients' reliance on the misrepresentation regarding copyright ownership makes Defendants liable to Axcess, Axcess failed to prove that it suffered a loss as a result of the misrepresentation.[5] Donnini sent the letters in December 2004. The Orlando seminar was scheduled for March 2006. Otis Conner ("Conner"), Axcess's founder, testified that the video portion of the scheduled seminar for the Orlando station was canceled, without explanation, the night before the seminar. The Orlando station currently produces video production on its own, using an in-house production manager and other outside sources. While there is some evidence that the cancellation of the video segment may be related to the letter sent by Donnini, this evidence does not rise to the level of a preponderance of the evidence. With the dearth of evidence presented to support Axcess's claim that it suffered damages as a result of their client's reasonable reliance on the representations in the letter, it would be speculative for the court to conclude that the letter proximately caused any damage. Accordingly, the court determines that Axcess failed to establish the fourth element of its false misrepresentation claim; and therefore this claim fails.

---

[5]At trial, Axcess waived its damages claim; however, because damages is an element of a negligent misrepresentation claim, Axcess was required to present evidence on this issue. In any event, that Axcess waived its damages claim does not affect the court's analysis of this issue or the result it reaches.

**Memorandum Opinion and Order - Page 7**

## 2. Tortious Interference with a Contract

The elements of a claim for tortious interference with contract are:

(1) a contract subject to interference existed;
(2) the alleged act of interference was willful and intentional;
(3) the willful and intentional act proximately caused damage; and
(4) actual damage or loss occurred.

*ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 430 (Tex. 1997). Even if a plaintiff establishes all the elements of this claim, a defendant may prevail if he establishes the affirmative defense of justification. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). The justification must be based on either the defendant's exercise of his own legal rights, or a good faith claim to a colorable legal right, even if that claim ultimately proves to be mistaken. *Id.* at 211. "Generally, justification is established as a matter of law when the acts the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights." *Prudential Ins. Co. of Am. v. Financial Review Servs. Inc.*, 29 S.W.3d 74, 81 (Tex. 2000).

The court determines that Axcess failed to prove by a preponderance of the evidence that Donnini's actions proximately caused it any damage. Proximate cause is defined as follows:

> [A] cause which in a natural and continued sequence, produces an event, and without which the event would not have occurred; and in order to constitute proximate cause, the act or omission complained of must be such that one exercising ordinary care, according to the applicable definition thereof, would anticipate or foresee the particular event complained of, or some similar event which might probably result therefrom.

*Rudes v. Gottschalk*, 324 S.W.2d 201, 207 (Tex. 1959).

At the time Donnini sent his letters in December 2004 stating that Axcess may have engaged in copyright infringement, Axcess had a contract to provide advertising services for the Orlando station for six years from 2000-2003; and 2005-2006. The contract included providing certain video

**Memorandum Opinion and Order - Page 8**

services. Axcess also conducted seminars for the Orlando station that included a video segment. Prior to Donnini sending the letter, there were no complaints or problems with the service provided by Axcess to the Orlando station. In March 2006, the station canceled the video segment of a seminar Axcess was to conduct for the station's advertising clients without explanation. Axcess failed to prove by a preponderance of the evidence that the cancellation of this portion of the contract would not have occurred but for Donnini's letter. Axcess merely makes such an assumption. The Orlando station currently produces its own videos, using an in-house production manager and other outside talent and sources. There is insufficient evidence to establish the requisite causal link between the Orlando station's cancellation of the video segment of the seminar 15 months after Donnini sent the letter.

> The components of proximate cause are cause in fact and foreseeability. These elements cannot be established by mere conjecture, guess, or speculation. The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible.
>
> . . .
>
> Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. The danger of injury is foreseeable if its general character might reasonably have been anticipated. . . . Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury.

*Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477-78 (Tex. 1995) (internal citations and quotation marks omitted). Conjecture and speculation are insufficient to prove by a preponderance of the evidence that the Orlando station would not have canceled the video segment

**Memorandum Opinion and Order - Page 9**

of the seminar but for Donnini's action. Accordingly, as Axcess did not prove one of the elements of his tortious interference claim — that Donnini's actions proximately caused Axcess damage — it failed to establish this claim.

### 3. Tortious Interference With a Prospective Contract

The elements of a claim for tortious interference with prospective contract or business relation are:[6]

> (1) a reasonable probability that the parties would have entered into a contractual relationship;
> (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring;
> (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or he knew that the interference was certain or substantially certain to occur as a result of his conduct; and
> (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App. – Waco 2001, *pet. denied*) (citations omitted). "Independently tortious" means "conduct that would violate some other recognized tort duty." *Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 713 (Tex. 2001).

The court determines that Axcess failed to prove by a preponderance of the evidence that Defendants tortiously interfered with a prospective contract. Axcess presented evidence that Donnini sent letters to television stations that were its current, former or potential customers. Axcess's standard contract with the stations covered a six-year period. Conner testified that although contracts terminate, sometimes former clients enter into new contracts with Axcess after

---

[6] Although the Texas Supreme Court examined the tort of interference with prospective contractual or business relations in *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001), it did not list the elements of this tort. The court therefore sets out the elements of this tort as listed in *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App. – Waco 2001, *pet. denied*).

**Memorandum Opinion and Order - Page 10**

a break in the business relationship of some time. Conner considered all former clients as prospective clients, because there was the possibility or prospect that these former clients would enter into new contracts with Axcess.

The court determines that, even if Axcess's former clients are considered to be prospective clients who may enter into new contracts with Axcess, this is not evidence of a *reasonable probability* that the former clients would have entered into a contractual relationship with Axcess. It is only a mere possibility. As to the Orlando station, it renewed its contract with Axcess, but did not include any provisions for video services. The Orlando station currently produces its videos in-house using outside sources. There is no evidence of a reasonable probability that the station would have entered into a contract for Axcess to provide video services, but for Donnini's actions. This is speculative at best.

Even if the court were to determine that Axcess proved by a preponderance of the evidence the first element of its claim for tortious interference with prospective contract, Axcess did not prove the second element – an independently tortious or unlawful act by Defendants that prevented the relationship from occurring. Thus this claim also fails for this reason.

### B.     Injunctive Relief

Axcess also seeks permanent injunctive relief. The elements for a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). The elements for granting a preliminary injunction are: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) that the threatened injury

outweighs the threatened harm to defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985). Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the preliminary injunction. As Axcess has not succeeded on the merits of this action, it fails to satisfy one of the prerequisites for injunctive relief. Accordingly, it is not entitled to injunctive relief.

### III.   Conclusion

For the reasons herein stated, the court determines that Axcess has not proved by a preponderance of the evidence that Defendants engaged in unfair competition by making a negligent misrepresentation, or by tortiously interfering with an existing or prospective contract. The court also concludes that Axcess is not entitled to injunctive relief. Accordingly, the court **dismisses with prejudice** Axcess's unfair competition claim against Defendants Donnini Films and Steve Donnini. As the parties have admitted that they are the co-authors and co-owners of the video at issue in this case, the court **dismisses with prejudice** Defendants' copyright infringement counterclaim against Axcess. The court will issue judgment by separate document pursuant to Fed. R. Civ. P. 58.

**It is so ordered** this 18th day of September, 2006.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge